IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRYAN CLARK,

          Plaintiff,

    v.

WONG,

          Defendant.

No.  2:23-CV-1439-DAD-DMC-P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Defendant's motion for summary judgment.  See ECF No. 26. Plaintiff has filed a declaration in opposition. See ECF No. 30.  Defendant has filed a reply. See ECF No. 31.

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

1

moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff alleges one claim against Defendant Wong for a violation of his Eighth Amendment rights. See ECF No. 1, pgs. 3-4. Plaintiff alleges that he began experiencing problems with his vision around July 28, 2019, and reported it to the medical department. See id. at 3. Plaintiff alleges he was sent to see an ophthalmologist, Dr. Petkar, on September 26, 2019. See id. According to Plaintiff, Dr. Petkar stated that the issue was "caught in time" and his eye would "get better" with medication. Id. Plaintiff states that he was scheduled to return to see Dr. Petkar again in two weeks. See id.

Plaintiff states that, upon his return to prison, the medication was not administered to him. See id. Plaintiff alleges that his condition worsened significantly. See id. Plaintiff claims he only found out he was not being administered the medication Dr. Petkar prescribed him when he ordered his medical records on September 30, 2022. See id. Plaintiff alleges he returned to see Dr. Petkar on October 17, 2019, and was asked if he received the medication. See id. Plaintiff alleges he responded that he was unsure if that was the medication he received which made Dr. Patkar seem "irritated." Id. Plaintiff alleges Dr. Petkar then spoke to Defendant. See id.

Plaintiff states he was admitted to U.C. Davis hospital to receive medication and that he had eye surgery on November 21, 2019. See id. Plaintiff asserts he has "ongoing problems, headaches, blurry vision, [and] blindness." Id. at 4. According to Plaintiff, he was then seen by Dr. Zeiter who told him "it's over you'll never see out of that eye any better than you do

now and it may get alot (sic) worse" and also told Plaintiff that if he had received treatment sooner there would be a different outcome. Id.

Plaintiff then requested his medical records and received them on September 30, 2022. See id. Plaintiff alleges the record shows that Defendant was deliberately indifferent to Plaintiff's serious medical needs by not ordering and administering the medication that Dr. Petkar ordered. See id. Plaintiff alleges that, if Defendant had followed Dr. Petkar's order, Plaintiff's eye would have recovered, and he would not be suffering. See id.

## II.  THE PARTIES' EVIDENCE

### A.    Defendant's Evidence

Defendants motion is supported by a declaration by defense counsel Ryan Gille, Esq., ECF No. 26-1, an excerpt of Plaintiffs Deposition labeled Exhibit A, ECF No. 26-2, a declaration by Defendant Wong, ECF No. 26-3, a medical record for vitreoretinal service labeled Exhibit A[1], ECF No. 26-4, medical records from U.C. Davis Medical Center and HD Retina Eye Center labeled Exhibit B, ECF No 26-5, and Defendant's separate statement of undisputed facts, ECF No. 26-6.

Defendant asserts that the following facts relating to his treatment of Plaintiff's eye condition are undisputed:

1.      At all times relevant, Plaintiff Bryan Clark was a state prison inmate who was incarcerated at Mule Creek State Prison in Ione, California.  ECF No. 1.

2.      Defendant Dr. Wong was a Physician and Surgeon at MCSP and was Plaintiff's Primary Care Physician from 2017 to 2024. Wong Decl., ¶ 4.

3.      Plaintiff alleges that he was having issues with his vision in July 2019.  ECF No. 1 and Wong Decl., ¶ 6.

4.      Plaintiff saw a CDCR optometrist on September 19, 2019, to rule out a retinal tear.  Wong Decl., ¶ 6.

5.      Plaintiff was then referred to an outside specialist and saw an ophthalmologist on September 26, 2019, who recommended Voriconazole, an antifungal medication.  Id.

---

[1]      Both ECF 26-2 and 26-4 are labeled Exhibit A.

6.      After the appointment on September 26, 2019, Plaintiff was to have laboratory testing for a fungal infection and to commence a course of antifungal medication.  Id.

7.      The order for the tests and medicine was sent to MCSP. Wong Decl., ¶ 7.

8.      At that time, Defendant Wong was not on duty and would not have been responsible for ordering the medication or the tests at that time.  Id.

9.      It would have been whoever was on duty when the order was received to order the medication or the tests.  Id.

10.      Plaintiff did not receive the anti-fungal medicine, but the laboratory tests returned with negative results for a fungal infection. Wong Decl., ¶ 8 and Exhibit A.

11.      Plaintiff's vision problems and ocular pain persisted resulting in a follow-up appointment with the outside specialist on October 17, 2019.  Wong Decl., ¶ 9.

12.      During this visit, the specialist spoke with Defendant Wong who was not aware of what had been recommended for Plaintiff.  Wong Decl., ¶ 10.

13.      The specialist contacted Defendant Wong who authorized Plaintiff to be admitted to the emergency room at U.C. Davis.  Wong Decl., ¶ 11.

14.      The ophthalmologist recommended an urgent evaluation by a rheumatologist to reduce immunosuppressants and consider administering voriconazole and vitrectomy.  Id.

15.      Defendant Wong immediately contacted San Joaquin General Hospital and recommended that Plaintiff be evaluated in the emergency room.  Id.

16.      Plaintiff continued to receive treatment for his vision problems, but his condition is not related to a fungal infection and Plaintiff has no evidence to the contrary.  Wong Decl., ¶¶ 12-13; Gille Decl., Exhibit A.

ECF No. 26-6, pgs. 1-4.

///

///

///

///

///

5

**B.**      **<u>Plaintiff's Evidence</u>**

In response to Defendant's motion, Plaintiff filed an opposition.  <u>See</u> ECF No. 30. Attached to ECF No. 30 are various unlabeled documents, as follows:

- Health Care Services Request Form dated 7/29/19.

- Health Care Services Request Form dated 7/20/21.

- Heath Care Services Request Form dated 5/25/21.

- Health Care Services Request Form dated 7/18/21.

- Healthcare Provider Canceled Visit.

- Statement on frustration with cancelation of healthcare due to COVID-19 while still having to perform work.

- Health Care Services Request Form dated 1/28/22.

- Health Care Services Request Form dated 10/26/22.

- Health Care Services Request Form dated 11/22/22.

- Health Care Services Request Form dated 1/18/23.

- Health Care Services Request Form dated 2/15/23.

- Health Care Services Request Form dated 3/29/23.

- Health Care Services Request Form dated 7/10/23.

- Health Care Services Request Form dated 8/7/23.

- Health Care Services Request Form dated 8/14/23.

- Health Care Services Request Form dated 9/11/23.

- Health Care Services Request Form dated 10/13/23.

- Health Care Services Request Form dated 10/18/23.

- Health Care Services Request Form dated 1/17/24.

- Health Care Services Request Form dated 4/3/24.

- Health Care Services Request Form dated 4/15/24.

6

- Medical Progress Notes with no date.

- Follow Up Ophthalmology Referral dated 9/30/19.

- Referral to Retinal Specialist Evaluation dated 9/19/19.

- OTM [Out to Medical] Urgent Return Follow Up 20 dated 9/26/19.

- Follow Up RN dated 10/4/19.

- Follow Up RN dated 10/7/19.

- Follow Up RN dated 10/8/19.

- Visit Note from Animesh Petkar at Natural Vison dated 10/17/19.

- Emergency Documentation from San Joaquin General Hospital dated 10/17/19.

ECF No. 30, pgs. 8-41.

### III.  DISCUSSION

Defendant argues he is entitled to summary judgment in his favor because the undisputed evidence shows that Defendant was not deliberately indifferent to Plaintiff's medical needs and because there is no evidence that Defendant's conduct caused Plaintiff to suffer any damage.  See ECF No. 26, pg. 3.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when

7

two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

///

///

8

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not generally give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  However, a claim involving alternate courses of treatment may succeed where the plaintiff shows: (1) the chosen course of treatment was medically unacceptable under the circumstances; and (2) the alternative treatment was chosen in conscious disregard of an excessive risk to the prisoner's health.  See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

According to Defendant:

> The undisputed evidence shows that Dr. Wong was not deliberately indifferent to Plaintiff's medical needs. The Eighth Amendment requires more than negligence or a disagreement over treatment; it demands proof that Dr. Wong knew of, and consciously disregarded, a serious medical risk. The facts overwhelmingly show that Dr. Wong did no such thing.

ECF No. 26, pg. 10.

The Court agrees.  Plaintiff alleges to have first experienced problems with his eye in late July 2019.  Defendant Wong's declaration shows that Plaintiff saw an ophthalmologist at the prison several weeks later in September 2019.  Plaintiff was then referred to an outside specialist who saw Plaintiff the following month on September 26, 2019.  The specialist ordered laboratory tests and prescribed antifungal medication to treat the potential for a serious infection.  While Defendant states that he was not on duty when the order for lab tests and prophylactic medication were received by the prison medical office, the evidence Defendant presents at Exhibit A to his declaration shows that lab tests came back negative for fungal infection.  Given the negative lab results, the prescription for antifungal medication was not filled.

Plaintiff continued to complain of problems with his vision at a follow-up visit with the outside specialist on October 17, 2019.  Defendant Wong spoke with the outside specialist during this visit at which time the specialist recommended that Plaintiff be seen at the emergency room on an urgent basis (within 72 hours) to consider the necessity of a medical

procedure to address a problem with Plaintiff's retina.  Defendant Wong immediately contacted San Joaquin General Hospital and requested that Plaintiff be seen as soon as possible.  Exhibit B to Defendant's declaration reflects that Plaintiff was ultimately diagnosed and treated for a retinal tear.

These facts show that, from the time Plaintiff began complaining of problems with his vision to the time Plaintiff was diagnosed and treated for a retinal tear, Defendant Wong provided medical treatment.  To the extent Plaintiff's claim hinges on a delay in being provided antifungal medication, the Court agrees with Defendant that the evidence shows that the lack of antifungal medication could not have contributed to problems with Plaintiff's eye because lab tests showed no fungal infection.

The Court finds that Defendant has met his initial burden on summary judgment of adducing evidence which supports his argument that, during the times relevant to this case, Defendant provided Plaintiff with timely and attentive medical care related to his vision complaints, and that any delay in providing antifungal medication did not cause Plaintiff to suffer any injury.  The burden shifts to Plaintiff to produce evidence demonstrating a genuine dispute of material fact.  The documents attached to Plaintiff's opposition brief fail to carry this burden.  Rather, the documents largely confirm the timeline of events shown by Defendant's evidence.  See ECF No. 30, pgs. 8-41.  While Plaintiff's documents cover a time period after Plaintiff's treatment for a retinal tear in late 2019, Plaintiff's complaint does not allege any conduct by Defendant after that time and, as such, does not create a genuine dispute of material fact during the relevant time period.

///

///

///

///

///

///

///

10

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant's motion for summary judgment, ECF No. 26, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 24, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

11